PKC:LMN
F.#2010R02198

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

M-11-237

UNITED STATES OF AMERICA

    -against-

ONE TOSHIBA SATELLITE LAPTOP COMPUTER
L455-S5000, SERIAL NUMBER 4A379233K

----------------------------------------X

AFFIDAVIT IN SUPPORT
SEARCH WARRANT

(Fed. R. Crim P. 41)

EASTERN DISTRICT OF NEW YORK:

    JOHANNA ESPOSITO, being duly sworn, deposes and says that she is a Special Agent of the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, there is probable cause to believe that there will be located in ONE TOSHIBA SATELLITE LAPTOP COMPUTER L455-S5000, SERIAL NUMBER 4A379233K (the "SUBJECT COMPUTER"), which currently is in the custody of the Suffolk County Police Department ("SCPD"), certain evidence, namely (1) photographs of girls and women who worked as prostitutes; (2) advertisements for prostitution services; (3) communications, documents and records relating to the prostitution business, including, but not limited to, the posting of advertisements for prostitution services on the Internet, contact names and telephone numbers of pimps, as well as victims who were forced into or participated in prostitution; and (4)

2

communications, documents and records relating to narcotics trafficking, including, but not limited to, contact names and telephone numbers of customers, records of narcotics sales and purchases, and contact names and telephone numbers of narcotics traffickers and customers, all of which represent evidence, fruits, and/or instrumentalities of violations of Title 18, United States Code, Sections 1591(a) and 2421, and Title 21, United States Code, Sections 841(a)(1) and 846.

The source of your deponent's knowledge and grounds for her belief are as follows:

### INTRODUCTION

1.  I have been a Special Agent with the FBI for fourteen and a half years. I am currently assigned to a squad in the New York Field Office that investigates civil rights crimes, including sex trafficking. As part of this investigation, I have been working with detectives and officers of the Suffolk County Police Department ("SCPD").

2.  This affidavit is made in support of an application for a warrant to search the SUBJECT COMPUTER, which was obtained by agents of the FBI and Detectives from the SCPD on February 22, 2011, as further described below. Since the time the FBI and SCPD have obtained the SUBJECT COMPUTER, it has been in the custody of the SCPD.

3

3. This affidavit is based upon information I have gained from my investigation, training and experience, as well as information from other law enforcement agents and officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of a violation of Title 18, United States Code, Sections 1591(a) and 2421, and Title 21, United States Code, Sections 841(a)(1) and 846, are located within the SUBJECT COMPUTER.

<u>PROBABLE CAUSE TO SEARCH</u>

4. I and other law enforcement agents, including Detectives from the SCPD, are investigating the operation of a prostitution and drug distribution business run by AKEEM CRUZ, also known as "Vybe" and "Mello."

5. AKEEM CRUZ is a pimp who prostitutes women in and around Portland, Maine; Suffolk County, New York; and other locations. CRUZ posts advertisements of his workers' sexual services on internet websites, such as Backpage.com and Craigslist.com, along with a phone number on the ads for customers to call to set up appointments with the women.

6. On or about August 13, 2010, a confidential source ("CS") was interviewed by law enforcement. The CS stated that a

female ("Female-1") that he/she knows told the CS that she (Female-1) prostituted for CRUZ, and that Female-1 was advertised on Craigslist. The CS stated that Female-1 lives in Maine. The CS stated that around Memorial Day weekend in 2010, s/he dropped off Female-1 at the bus station in Portland, Maine so that Female-1 could travel to New York to prostitute for CRUZ. The CS stated that CRUZ and Female-1 traveled together by bus to New York that weekend.

7. Records checks of the Concord Coach bus company reveal that both Female-1 and CRUZ bought bus tickets on or about June 1, 2010.

8. Records checks indicate that Female-1 checked into a room at a hotel in Hauppauge, New York. Hotel surveillance video footage corroborates that Female-1 and CRUZ were present in the hotel.

9. A few months later, on or about October 20, 2010, CRUZ was arrested on unrelated narcotics charges and is presently in custody in Maine on those charges.

10. On or about February 22, 2011, law enforcement officers interviewed an individual ("Female-2") regarding CRUZ. Female-2 stated that she knows both Female-1 and CRUZ, and that she knows that CRUZ was Female-1's pimp. Female-2 stated that Female-1 gave all the money she earned from prostituting to CRUZ. Female-2 stated that Female-1 prostituted from hotel rooms, and

5

at the end of each night, CRUZ would come to the hotel room to collect the money from Female-1. Female-2 stated that one of the names Female-1 used in the ads posted for her on the internet was "Lexy".

11. Female-2 stated that she accompanied Female-1 and CRUZ to Long Island around February or March 2010, where they all checked into a hotel in Hauppauge, New York. The purpose of the trip was so that Female-1 could prostitute from the hotel room. At the hotel, Female-1 and CRUZ pressured Female-2 into prostituting. Female-2 ultimately agreed to prostitute. Female-2 stated that CRUZ posted an ad advertising Female-2's sexual services from a computer on an internet website using sexually suggestive pictures of her. Female-2 thereafter gave half the money she earned from the customers to CRUZ.

12. Female-2 also stated that she knows that CRUZ is a drug dealer, who sells cocaine, among other narcotics. Female-2 stated that Female-1 told her that Female-1 had taken some of CRUZ's cocaine at one point, which angered CRUZ.

13. During the course of this investigation, law enforcement agents interviewed another confidential source ("CS-2"), who used to lived with CRUZ for a few months, beginning in February 2010. CS-2 stated that s/he knows that CRUZ is a pimp who prostituted Female-1 in Maine and New York until sometime after June 2010. CS-2 stated that Female-1 advertised her sexual

6

services on Craigslist. CS-2 stated that CRUZ showed CS-2 an ad for Female-1 on Craigslist at one point. CS-2 stated that CRUZ told him/her that CS-2 could earn money prostituting, however, CS-2 stated that he/she has never prostituted.

14. According to CS-2, CRUZ was a drug dealer. At one point, CRUZ told CS-2 that Female-1 had taken some of his drugs.

15. CS-2 stated that while CRUZ lived with CS-2, CRUZ kept his belongings at CS-2's residence. CS-2 stated that subsequent to CRUZ's arrest in October 2010 in Maine on the unrelated narcotics charges, CS-2 obtained CRUZ's computer, namely the SUBJECT COMPUTER, from another individual (Female-3). CS-2 stated that Female-3 was friendly with CRUZ and had custody of the SUBJECT COMPUTER while CRUZ was in jail on the narcotics charges. CS-2 stated that after he/she obtained custody of the SUBJECT COMPUTER from Female-3, CS-2 notified CRUZ of this fact. CRUZ thereafter gave CS-2 permission via telephone to regularly use and keep the SUBJECT COMPUTER. CS-2 thereafter kept the SUBJECT COMPUTER in his/her residence. CS-2 stated that s/he has observed files created by CRUZ on the SUBJECT COMPUTER.

16. On or about February 22, 2011, CS-2 gave written consent to FBI agents and Detectives from the SCPD to seize and search the SUBJECT COMPUTER, which was located in CS-2's

residence. Accordingly, that same day, with the consent of CS-2, FBI agents and SCPD Detectives retrieved the SUBJECT COMPUTER.[1]

17. Law enforcement records checks have confirmed that CRUZ has an address in Brooklyn, New York.

18. Law enforcement checks of Craigslist revealed numerous ads under the Erotic Services/Adult Entertainment section posted by an "Akeem Cruz", and listing CRUZ's known address in Brooklyn, New York. These ads advertise the sexual services for various women, including Female-1.

19. For example, one ad posted by "Akeem Cruz" on June 1, 2009 has the title "**Busty Bunny**" with the following text: "Hey fellas my name is glitter, im new in town and im jus lookin to have a good time. So if theresay [sic] guys out there willing to show me around shout me out." The ad concludes by listing a cellular telephone number with a Maine area code. This ad also indicates the location of the woman is in Hicksville, New York.

20. Another ad posted by "Akeem Cruz" on January 17, 2010 has the title, "~~~Gorgeous Busty Italian Bombshell~~~" with the following text: "Hey fellas im lexxy. Im back in town and looking for someone to keep me company. Ima [sic] a wonderful, mindful experience just waiting to happen. So be the first to jump into another world like no other. you [sic] better hurry,

---

[1] Although the government received written consent to search the SUBJECT COMPUTER from CS-2, out of an abundance of caution, the government is also seeking this search warrant.

it might be too late. Time is never rushed. xoxoxo". The ad concludes by listing the same Maine cellular telephone number. The ad also indicates that the location of the woman is in Woodbury, New York.

21. Another ad posted by "Akeem Cruz" on June 2, 2010 has the title, "jump into a world like no other - w4m" with the following text: "hi my name is lexy i have blond hair blue eyes great attitude i love what i do ur time with me is never rushed please no blocked calls and text messages thanks hope 2 hear from u soon...". The ad concludes by listing the same Maine cellular telephone number. The ad also indicates that the location of the woman is in Commack, New York.

TECHNICAL REQUIREMENTS TO SEARCH

22. Based on my knowledge, training, and experience, I know that in order to completely and accurately retrieve data maintained in computer hardware or on computer software, to ensure accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, it is often necessary that some computer equipment, peripherals, as well as the software utilized to operate such a computer, be subsequently processed by a qualified computer specialist in a laboratory setting. This is true because of the following:

9

      a.   The volume of evidence.  Computer storage devices (such as hard disks, diskettes, tapes, laser disks, etc.) can store the equivalent of thousands of pages of information. Additionally, a user may seek to conceal criminal evidence by storing it in random order with deceptive file names.  Searching authorities are required to examine all the stored data to determine which particular files are evidence or instrumentalities of criminal activity.  This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data analysis on-site.

      b.   Technical requirements.  Analyzing computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications.  Thus it is difficult to know prior to the search which expert possesses sufficient specialized skill to best analyze the system and its data.  No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (both from external

sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

23. The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence and instrumentalities authorized for seizure by the warrant); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic "key-word" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

WHEREFORE, your deponent respectfully requests that a search warrant issue authorizing members of the Federal Bureau of Investigation and the SCPD to search the SUBJECT COMPUTER for (1)

11

photographs of girls and women who worked as prostitutes; (2) advertisements for prostitution services; (3) communications, documents and records relating to the prostitution business, including, but not limited to, the posting of advertisements for prostitution services on the Internet, contact names and telephone numbers of pimps, as well as Females who were forced into or participated in prostitution; and (4) communications, documents and records relating to narcotics trafficking, including, but not limited to, contact names and telephone numbers of customers, records of narcotics sales and purchases, and contact names and telephone numbers of narcotics traffickers and customers, all of which represent evidence, fruits, and/or instrumentalities of violations of Title 18, United States Code, Sections 1591(a) and 2421, and Title 21, United States Code, Sections 841(a)(1) and 846.

_____
JOHANNA ESPOSITO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
____3____ day of March, 2011